McKEEN ET AL., APPELLANTS, *v.* BROOKS, RESPONDENT.

(No. 3,967.)

(Submitted January 10, 1919. Decided February 15, 1919.)

[177 Pac. 745.]

*Landlord and Tenant—Contract of Lease—Construction—Sale of Property—Right to Possession—Rights of Tenant.*

Landlord and Tenant—Improvements by Tenant—Compensation by Landlord—Rule.

1. It is the general rule that in the absence of a special agreement to that effect, a tenant cannot, by erecting buildings or making other improvements upon leased property, impose upon the landlord the burden of making compensation for such improvements.

[As to tenant's right to be allowed for improvements, see note in 81 Am. St. Rep. 181.]

Same—Leases—Sale of Premises—Disturbing Possession—Damages—Liability.

2. Where a lease reserved in the lessor the right to sell the property before the end of the term, but provided that if the lessees should be disturbed in their possession "on account of said sale," the lessor should reimburse them for the original cost of improvements made by them, the contract *held* to have contemplated a disturbance of the lessees' possession by reason of a sale made under such circumstances that the purchaser might rightfully demand possession before the expiration of the term, and not one based upon a wrongful act of the purchaser.

Same—Sale of Property—Right to Possession.

3. In the absence of an agreement to the contrary, a purchaser of realty held by another under an unexpired lease is not entitled to im-

mediate possession, if he had actual or constructive knowledge of the lease at the time of his purchase.

Same—Sale of Property—Rights of Lessees—Constructive Notice.

4. A purchaser of real property which was then in the actual possession of lessees, was charged with knowledge of any interest which they could establish.

Same—Sale of Property—Possession—Rights of Tenants.

5. Where a purchaser of real property had both actual and constructive notice of an unexpired lease of the premises, and there was no agreement between him and the seller for possession prior to the expiration of the term, he was not entitled to demand possession and the lessees were not required to obey his notice to quit, but could maintain an action for damages against anyone who invaded their possession.

Same—Sale of Leased Premises—Wrongful Demand for Possession—Effect.

6. A landlord was not answerable in damages to his tenants under a contract of lease which provided that if they were disturbed in their possession on account of a sale of the premises, he would reimburse them for certain improvements made by them, where, after a sale subject to the rights of the tenants under the lease, the purchaser, without the landlord's knowledge or sanction, wrongfully demanded, and the tenants mistakenly surrendered, possession.

*Appeal from District Court, Fergus County; Roy E. Ayers, Judge.*

ACTION by J. L. McKeen and another against John Brooks. From a judgment for defendant, and an order denying them a new trial, plaintiffs appeal. Affirmed.

*Mr. E. K. Cheadle,* for Appellants, submitted a brief, and argued the cause orally.

*Messrs. Belden & De Kalb,* for Respondent, submitted a brief; *Mr. E. M. Hall,* of Counsel, argued the cause orally.

A sale of itself does not operate to terminate a tenancy. It does not matter to the tenant where the fee-simple title is vested. This rule of law has been established since feudal times. During the feudal times a sale terminated the tenancy if the tenant so desired. But if he attorned to the purchaser it did not so operate. This rule no longer exists. (Tiffany on Landlord & Tenant, pp. 873, 874; Rev. Codes, sec. 4625.) In the absence of an agreement, some covenants run with the land. All covenants running with the land bind the new landlord

and the lessee identically as they bound the lessee and his original landlord. They are both bound by the covenants of the contract to the same extent and as fully and exactly as though they had themselves solemnly entered into them. (11 Cyc. 1095.) The sale here carried with it all of, but none other than, the covenants running with the land. It did not carry with it the covenant in this case, for if it did, it carried away plaintiffs' right of action against Brooks. Under plaintiffs' own theory, if such were their theory, they would be nonsuited. But they treat this as a personal covenant; they treat it as one not running with the land, but one remaining and existing between themselves and Brooks. The tenants had the right to retain possession until paid for their improvements. If the particular covenant is a personal one, then Brooks alone had reserved to him the right to terminate the tenancy and incur the penalty. (*McClung* v. *McPherson,* 47 Or. 73, 81 Pac. 567, 82 Pac. 13.) This right did not belong to plaintiffs.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In May, 1912, John Brooks, the owner of certain real estate, leased the property to McKeen and Friedlein for the term of three years. The lessees were authorized, at their own expense, to inclose the property and to erect necessary buildings thereon to render it available as an amusement park. The original cost of these improvements was $1,547.45, and the property was devoted to the purpose intended for the seasons 1912 and 1913. In April, 1913, Brooks sold the property, and in January, 1914, the purchaser demanded possession from the lessees, who thereupon surrendered possession and brought this action to recover from Brooks the original cost of the improvements which they had placed upon the property. Defendant prevailed in the lower court, and plaintiffs appealed from the judgment and from an order denying them a new trial.

It is the general rule that in the absence of a special agree-
[1]   ment the tenant cannot, by erecting buildings or making

other improvements upon the leased property, impose upon the landlord the burden of making compensation for such improvements. (2 Tiffany on Landlord & Tenant, sec. 270.) The rule is recognized in this instance, but it is insisted that by contract the lessor bound himself to pay for the improvements originally placed upon this property by the lessees.

The rights of the parties are to be determined by reference [2] to that provision of the lease which reads as follows: "This lease may be terminated prior to the expiration of the term hereinbefore specified in case of sale of said real property by said party of the first part [Brooks], and it is hereby agreed by all parties hereto that said party of the first part has the right to make sale of said real property at any time but in case of sale by said party of the first part prior to the expiration of the said term of three years, then in the event that the said parties of the second part [McKeen & Friedlein] shall be disturbed for or on account of said sale in their possession of the said leased premises, said first party shall reimburse the said parties of the second part for the original cost of the improvements placed upon the said leased premises," *etc.*

The single question for decision is: Under what circumstances did the lessor agree to become liable to the lessees for the original cost of their improvements?

It is clear that a sale of the premises of itself did not render him liable; neither did the fact that the lessees were disturbed in their possession. To fasten responsibility upon him, it required a sale before the expiration of the lease and a disturbance of the lessees' possession "for or on account of said sale." In the connection in which it is used, the word "for" cannot be given any meaning whatever, but the phrase "on account of said sale" furnishes the key to the solution of the question. As here used, it means "by reason of" (6 Words and Phrases, 4968; *Brown* v. *German-American T. & T. Co.*, 174 Pa. 443, 34 Atl. 335), or "as the direct and proximate result of" (1 Words and Phrases, Second Series, 546; *Houston & Tex. C. R. R. Co.* v. *Anglin*, 45 Tex. Civ. App. 41, 99 S. W. 897).

We will not indulge the presumption that the parties to the lease assumed that if a sale was made, the purchaser would commit a tort; and therefore the phrase "on account of said sale" ought not to be extended in its meaning to cover the case of a wrongful disturbance of the lessees' possession; on the contrary, the parties must have had in contemplation a sale made under such circumstances that the purchaser might rightfully demand possession before the expiration of the term.

We are unable to agree with counsel that the provision in the lease quoted above is in effect a covenant for quiet enjoyment. Instead of assuring quiet enjoyment, the lessor reserved to himself the right to disturb the possession of the lessees before the expiration of the lease, in consideration that he should pay the original cost of improvements, if he did so. Apparently the parties all understood that a sale might be made under such circumstances that the purchaser would not be entitled to possession until the expiration of the lease, or, again, that the lessor might be required to deliver possession immediately in order to effect a sale, and in the latter event the lessees agreed to surrender possession and accept the original cost of their improvements as compensation for the relinquishment. Under no other circumstances do we think it can be said that the sale would be the direct and proximate cause of the disturbance of the lessees' possession.

The phrase "on account of said sale" appears to have been used advisedly for the purpose of limiting the lessor's liability to the particular combination of circumstances indicated, *viz.,* a sale coupled with a rightful demand for possession.

In the absence of an agreement, the purchaser of these [3] premises was not entitled to possession as against the lessees, if he had knowledge—actual or constructive—of the lease, but he purchased subject to it, and the rights of the lessees were not affected. (24 Cyc. 926; 1 Tiffany on Landlord & Tenant, sec. 146.)

The record disclosed that at the time of the sale, the lessees [4] were in possession of the property, and the purchaser was

thereby charged with knowledge of any interest which they could establish (*Baum* v. *Northern Pac. Ry. Co., ante,* p. 219, 175 Pac. 872), and in addition he had actual knowledge of the outstanding lease, and it is not contended that there was any agreement with the lessor for possession prior to the expiration **[5]** of the term. Under these circumstances, the purchaser was not entitled to demand possession, and the lessees were not required to obey the notice to quit. While they did not own any interest in the fee, they were the owners of the use of the premises during the term of their lease, or until it was extinguished as provided for in the contract (16 R. C. L. 676), and could maintain an action for damages against anyone who invaded their possession.

The landlord is not liable to the tenant for the wrongful acts **[6]** of a third person which he has not sanctioned or authorized (24 Cyc. 1056), and the record in this instance discloses that Brooks had no knowledge of the act of the purchaser in demanding possession, and was not in any sense responsible for it.

If we assume for present purposes that by the terms of this lease the lessees were given an option to terminate it upon a sale by the lessor, this fact would only reflect upon their liability for future rent, and not upon the liability of Brooks for their initial expenditure. The language cannot be construed to mean that the liability of the lessor attached upon a termination of the lease. By the express terms of the contract his liability was contingent upon a sale, coupled with a disturbance of the lessees' possession "on account of said sale."

We think the trial court was correct in its conclusion that the lessees were not disturbed in their possession as the direct and proximate result of the sale by Brooks, and that they cannot recover in this action.

The judgment and order are affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Cooper concur.