Henry G. Miller and Margaret V. Miller v. Commissioner.
Henry G. Miller v. Commissioner
Docket No. 32890.
United States Tax Court
1952 Tax Ct. Memo LEXIS 155; 11 T.C.M. (CCH) 684; T.C.M. (RIA) 52208; June 27, 1952
Kent H. Meyers, Esq., and Gordon F. Basler, Esq., 2021 N.B.C. Bldg., Cleveland. Ohio, for the petitioners. Charles R. Hembree, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined for 1948 a deficiency in income tax of $1,274.10 and an addition thereto of $690.05 under section 294 (d) (1) (A) and (d) (2) based on the petitioners' failure to file a declaration of estimated tax and a substantial underestimate of estimated tax. The only issue for decision is whether the Commissioner erred in adding to the income of the petitioners $3,723.63 alleged to represent the distributive share of partnership income belonging to a trust for three minor children of the petitioners. Findings of Fact The petitioners, husband and wife, filed a joint return for 1948 *156 with the collector of internal revenue for the Eighteenth District of Ohio. Henry G. Miller, hereafter called Henry, has been engaged in business for a number of years as a real estate broker. He received net income of about $18,000 during each of the years 1947 and 1948 from that business. Henry was also a partner with Henning Olson in a partnership known as Miller-Olson, Contractors, which carried on a business of constructing residences. Olson, an experienced contractor, supervised all of the construction work. Henry, who divided his time about equally between the real estate brokerage business and the partnership, limited his work for the partnership to keeping the books, issuing checks for all wages, materials and other expenditures, obtaining blueprints, o taining permits for construction, obtaining and withdrawing funds for construction purposes, and all of the general office work. The partnership had no office employees. The total capital invested in the partnership by Henry at the close of 1946 was $9,064.75 and that invested by Olsen was $9,565.18. The partnership arrangement was that Olson would have 65 per cent of the profits and Henry 35 per cent. Olson was in no *157 way related to the petitioners. The petitioners had three minor children, one born in 1941, another born in 1944, and the third born in 1946. Henry created a trust on January 3, 1947 for each of his minor children. He named Margaret trustee of each trust. He assigned to each trust $2,589.93 of his capital interest in the partnership, representing a 10 per cent participation in profits and losses. He also transferred to each trust 15,000 shares of stock of Ausic Mining and Reduction Company, Limited, having a value of 25 cents a share. The trustee was to pay all expenses of the trust, including compensation to her not to exceed 6 per cent of the income. The remaining income was to be paid to the beneficiary for life in such amounts and at such times as the trustee in her sole discretion deemed necessary and desirable, "it being the primary intention of the Settlor to accumulate sufficient funds in said Trust to provide for the schooling and education and health of said beneficiary." The trustee could also invade principal, if necessary, to provide for the education, comfort and health of the beneficiary. The trust was to terminate upon the death of the beneficiary and the trust *158 property was then to go to the heirs of the body of the beneficiary, but, if none, then to the other surviving children of the petitioners or to their heirs. Each trust was to terminate upon the 37th birthday of the beneficiary, at which time the trust property was to be paid over to the beneficiary. The trustee was given broad powers. The trust contained no provision for revocation or amendment. Olson, Henry, and Margaret as trustee, entered into a partnership agreement on January 3, 1947, the effect of which was to continue the business of the old partnership under the same name. The partners contributed assets as follows: Henry
$1,294.96
Margaret, Trustee
7,769.79
Olson
9,565.18 Profits and losses were to be shared 5 per cent by Henry, 30 per cent by Margaret, Trustee, and 65 per cent by Olson. The agreement provided that each partner could make and take contracts on behalf of the partnership business, but only in the firm name, and each had the right to discharge employees. Margaret had no right to sign checks. The agreement was for a period of five years and upon dissolution the remaining capital assets were to be divided in proportion to each partner's *159 contribution as set forth above. A partner was allowed to sell his interest at any time after offering it to the other partners. Any dispute among the partners was to be settled by arbitrators, one to be chosen jointly by Henry and Margaret, one by Olson, and those two to choose a third. Henry created the three trusts because he wanted his children to be taken care of if anything happened to him or to his real estate brokerage business. He intended to support his family from his own income as he had in the past and he continued to support them from his own income. No income of the trust was ever used for the education or support of the children. The partnership return for 1948 shows net income of $12,412.09 distributable $3,723.63 to Margaret, Trustee, $8,067.86 to Olson, and $620.60 to Henry. Margaret filed fiduciary returns for each trust showing income from the partnership of $1,241.21 and all net income distributable to the beneficiary. She also filed individual income tax returns for each child, reporting the distributable income of the trust to which that child was entitled. The tax shown on those returns was paid. Olson's work for the partnership was the same after January 3, 1947 as *160 it had been prior thereto. Margaret, afterjanuary 3, 1947, did a considerable part of the work for the partnership which Henry had previously done, and Henry continued to do the balance of that work. He devoted not more than 30 per cent of his time to the partnership after January 3, 1947. The Commissioner, in determining the deficiency, held that the petitioners' share of the distributable income of the partnership was $4,344.23 and included therein the $3,723.63 shown as the distributive shares of the trustee for the three children. All of the parties to the partnership agreement of January 3, 1947, really and truly intended to join together in the conduct of the business of the partnership and actually joined in the conduct of that business during the taxable year 1948. The stipulation of the parties is incorporated herein by this reference. Opinion MURDOCK, Judge: The contention of the Commissioner is that Margaret as trustee was not a bona fide partner in the business of the partnership during 1948. A factual question is thus raised. He relies upon the fact that she, as trustee, did not contribute any new money to the business but her interest was represented entirely *161 by a share of the capital of Henry purportedly transferred to her as trustee for each of the three trusts. The purpose here was not merely to divide the family income for tax purposes. Capital was an important factor in the business. The income was not primarily attributable to the personal efforts of Henry. He was rewarded for such services as he rendered. His transfer of capital was complete and absolute. The evidence preponderates somewhat in favor of the petitioners' contention that Margaret, as trustee, was a genuine bona fide partner. Cf. Theodore D. Stern, 15 T.C. 521. The Commissioner also suggests that the income was taxable to Henry under section 167, but none of the income from these trusts was used to satisfy any obligation of Henry and, therefore, it is not taxable to him under section 167. See subsection (c). Decision will be entered under Rule 50.